UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE BOYINGTON on behalf of
J.O.J.H.,

                                   Plaintiff,

                                                                          <u>DECISION AND ORDER</u>

                                                                            12-CV-6653L

                                   v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,[1]

                                   Defendant.
_____

       Plaintiff, on behalf of her minor granddaughter, J.O.J.H., for whom she serves as guardian, appeals from a denial of disability insurance benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner.

       On October 22, 2009, the plaintiff filed an application for Supplemental Security Income on behalf of J.O.J.H. under Title II of the Social Security Act. Plaintiff alleged that J.O.J.H. had been disabled since June 16, 2006. (Tr. 40). Her application was initially denied, and a hearing was held

---

[1] Plaintiff's complaint names former Commissioner of Social Security Michael J. Astrue as the defendant. Carolyn W. Colvin, the current Acting Commissioner, automatically is substituted as the defendant pursuant to FED. R. CIV. P. 25(d)(1).

on March 31, 2011 before Administrative Law Judge ("ALJ") Michael W. Devlin. (Tr. 59-88). The ALJ issued a decision on July 8, 2011, concluding that J.O.J.H. was not disabled under the Social Security Act. (Tr. 40-53). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 3, 2012. (Tr. 1). Plaintiff now appeals.

For the reasons that follow, I find that the Commissioner's conclusions are not supported by substantial evidence, and that the record establishes that the claimant is disabled. The Commissioner's motion for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) (Dkt. #7) is denied, plaintiff's cross motion for judgment on the pleadings (Dkt. #9) is granted, and the matter is remanded for the calculation and payment of benefits.

DISCUSSION

Claimant was born June 7, 2006, and was four years old as of the hearing date. (Tr. 62).

Because the claimant is a child, a particularized, three-step sequential analysis is used to determine whether she is disabled. First, the ALJ must determine whether the child is engaged in substantial gainful activity. *See* 20 CFR §416.924. If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. If not, the analysis concludes with a finding of "not disabled." If the claimant does have a severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §416.926) – that is, if the child's impairments are functionally equivalent in severity to those contained in a listed impairment – the claimant is

disabled.  *See* 20 CFR §416.926(a).  If not, she is not disabled.  In making this assessment, the ALJ must measure the child's limitations in six areas: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being.  *See* 20 CFR §416.926a(b)(1).  Medically determinable impairments will be found to equal a listed impairment where they result in "marked" limitations in *two or more* domains of functioning, or an "extreme" limitation in one or more.  20 CFR §§ 416.926a(a), (d) (emphasis added).

     The Commissioner's decision that J.O.J.H. is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'"  *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) *quoting  Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

     Upon careful review of the record, I believe that the ALJ failed to grant due consideration to the evidence of record or to afford sufficient weight to the opinions of J.O.J.H.'s classroom teachers,

or to consider the claimant's scores on standardized tests of functional areas corresponding to some of the six relevant domains of functioning.

The ALJ first concluded that J.O.J.H.'s attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning and right-eye blindness constituted a severe impairment not meeting or equaling a listed impairment. He then proceeded to analyze whether J.O.J.H. has "marked" or "extreme" limitations in any of the six domains of mental functioning, based on the medical, educational and testimonial evidence presented.

With respect to the first functional domain, "acquiring and using information," the ALJ found that J.O.J.H. had less than marked limitations. In determining whether a preschool-aged child is able to acquire and use information, the ALJ is directed to consider whether the child has developed: (1) readiness skills for reading, such as listening to stories or rhyming words; (2) readiness skills for match, such as counting and sorting; (3) readiness skills for writing, such as coloring and copying; (4) the ability to use words to ask questions, describe things, and tell stories; (5) understanding of the order of daily routines; (5) understanding and retention of his or her own accomplishments; and (6) a fledgling understanding of more complex concepts, such as time. *See e.g.*, 20 C.F.R. §416.926(a)(h)(3).

The ALJ's conclusion that J.O.J.H.'s ability to acquire and use information is less than "marked" finds some support the record, such as in the assessment of her speech therapist, Christine Wallace ("Wallace"), with whom claimant meets three times per week. (Tr. 597-606). Wallace notes that J.O.J.H. "[r]equires multiple repetitions to learn new material [and] requires cueing and/or processing time to recall info[rmation]," but nonetheless described J.O.J.H.'s limitations in acquiring and using information as ranging between "a slight problem" and "an obvious problem." (Tr. 598). In addition to Wallace's opinion, the ALJ relied upon the opinion of claimant's physical

therapist, Linsey Holtz, who works with J.O.J.H. twice a week for 30 minutes at a time to develop gross motor skills, and rated four out of the ten areas of acquiring and using information as a "slight problem" or an "obvious problem," but marked the remaining six areas (some of which involve more sophisticated writing and communication skills) as "NA," indicating a lack of information sufficient to make an assessment. (Tr. 608).

Although the ALJ discussed these opinions in detail, he appears to have overlooked the assessments by Christine Wrench and Christine Stio, who were plaintiff's special education teachers and the instructors with whom she previously spent five half-days per week, and her full-day kindergarten teacher, Kristin Fitzgerald. (The ALJ did discuss some of this evidence elsewhere in his decision, affording the assessments of these teachers "great" or "significant" weight with regard to other domains.) Of the educators who contributed assessments to the record, these three teachers spent the greatest amount of time with J.O.J.H., and were arguably in the best position to assess her abilities in the domain of acquiring and using information during the relevant period.

Wrench's opinion assesses seven out of ten facets of acquiring and using information (the remaining three factors being marked "N/A"), and indicates that J.O.J.H. exhibits "serious" problems with comprehending oral instructions, understanding school and content vocabulary, understanding and participating in class discussions, recalling and applying previously learned material, and learning new material. J.O.J.H.'s ability to apply problem-solving skills in class discussions is described as "a very serious problem." (Tr. 221). Wrench also included comments emphasizing that, "[J.O.J.H.] has a lot of difficulty learning and retaining new information [that is] taught. She often has trouble 'word finding' to recall what an object is and has delayed processing." (Tr. 221). According to Stio, J.O.J.H. has issues in the same seven facets of acquiring and using information, with difficulties ranging from "a slight problem" to "a serious problem," and "requires

5

the assistance of a 1:1 aide to facilitate the comprehension of directions [and] newly learned materials. She needs prompting - both verbally [and] visually [-] to follow through on directions [and] class discussions." (Tr. 322). Similarly, Fitzgerald describes "slight" to "serious" problems with all ten facets of acquiring and using information, and reports that the claimant "has trouble recalling information. She requires a significant [number] of repetitions to learn something basic (i.e., letter ID and sounds [and] numbers]) [and] even then, the learning is inconsistent. She appears unable to answer questions at this time (social [and] academic)." (Tr. 346).

In addition to not mentioning these assessments in his analysis of J.O.J.H.'s ability to acquire and use information, it also appears that the ALJ did not consider or apply J.O.J.H.'s results on standardized testing in his analysis.

J.O.J.H.'s 2010 standardized test results are largely dispositive with respect to a "marked limitation" in her ability to acquire and use information. *Miles v. Astrue*, 775 F. Supp. 2d 715, 727 (S.D.N.Y. 2011). With regard to standardized tests administered to children, "a 'marked' limitation also means … [a] valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his [or her] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. 416.926a(e)(2)(iii).

According to J.O.J.H.'s records, she was administered the "cognitive domain" portion of the Battelle Developmental Inventory II ("BDI-2"), a standardized assessment which measures cognitive milestones for young children including attending to, perceiving, and processing information, remembering, thinking and knowing, in January 2010.[2] (Tr. 205). J.O.J.H. achieved a

---

[2] I find that the BDI-2's measurement of cognitive abilities is sufficiently similar to the functional areas that comprise the domain of "acquiring and using information" to be considered as an objective measurement of ability or functioning in that domain.

score quotient of 70, falling in only the second percentile.  The standard mean score on the BDI-2 is 100 with a standard deviation of 15, which places J.O.J.H.'s score of 70 precisely two standard deviations below the mean.[3]  Furthermore, the record establishes that J.O.J.H.'s "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. §416.926a(e)(2)(iii).  An annual review form completed by Wrench on February 4, 2010 reports these scores and explicitly notes that J.O.J.H.'s performance on the BDI-2 was "indicative of her performance in the classroom setting . . . [her test results] indicate a moderate to severe cognitive delay in relation to that of her same age peers."  (Tr. 205, 206).  Furthermore, the assessments by Wrench, Stio and Fitzgerald describe serious issues with J.O.J.H.'s ability to acquire and remember information, which further demonstrates that J.O.J.H.'s BDI-2 test results for the cognitive domain were not anomalous, but were consistent with her day-to-day performance.

Because I find that the record thus establishes that J.O.J.H. suffers from a "marked" limitation in the domain of acquiring and using information, and because the ALJ found, based on substantial evidence, that J.O.J.H. has a "marked limitation" in a second domain, "attending and completing tasks," a finding of disability is indicated and no further analysis is necessary. Nonetheless, the Court also notes that to the extent that the 2010 BD-2 test of J.O.J.H.'s "functional and adaptive skills" (self care and personal responsibility) provides an accurate measurement of the domain of "caring for self," J.O.J.H.'s 2010 score of 64 (first percentile) on that test, along with Wrench's observation that J.O.J.H. in fact "presents with a severe delay" in that area in her

---

[3] *See, e.g.,* www.riversidepublishing.com/products/bdi2/scoring.html (viewed September 12, 2014); www.assess.nelson.com/test-ind/bdi.html (viewed September 12, 2014).

classroom behaviors just as the test indicates, would support a finding of marked disability in the domain of "caring for self," as well. (Tr. 206).[4]

## CONCLUSION

As discussed above, the record establishes that J.O.J.H. has "marked" limitations in at least two domains of functioning, and as such, "the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose." *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003). The Commissioner's motion for judgment on the pleadings (Dkt. #7) is denied, plaintiff's cross motion (Dkt. #9) is granted, and the matter is remanded solely for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 16, 2014.

---

[4] The Court does note that the record contains 2011 BDI-2 test results (administered just before the hearing) for the claimant in the area of cognitive functioning. This time, J.O.J.H. scored "80" in cognitive functioning, demonstrating an apparent improvement which raised her score to between 1 and 2 standard deviations below the mean. (Tr. 368). However, in the same battery of standardized tests, she scored only 61 (second percentile) in the domain of social skills on the Preschool and Kindergarten Behavior Scales - 2nd edition (a standardized assessment measuring factors equivalent to the domain of "interacting and relating with others," with a mean score of 100 and standard deviation of 15), again placing her more than two standard deviations below the mean in a functional domain. Fitzgerald noted with respect to this score that J.O.J.H. has a "severe delay in social skills" and "does not typically choose to interact with peers at school," demonstrating that J.O.J.H.'s test scores were consistent with her day-to-day behavior. (Tr. 372.) Thus, regardless of whether the 2010 or 2011 standardized test scores are considered authoritative, both indicate that at the time of testing, J.O.J.H. has a marked limitation in at least one functional domain in addition to "attending and completing tasks," and in either case, given the consistency between J.O.J.H.'s test scores and her teachers' assessments of her daily performance, which support the degree of limitation indicated by the standardized tests, a finding of disability was mandated.